UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCOTT SIEGAL, | * |
| Plaintiff | * |
| | * |
| vs. | * |
| | * |
| MASCOT PETROLEUM COMPANY, INC., | * |
| A SUBSIDIARY OF SUNOCO, INC (R&M), | * |
| Defendant | * |
| | * |

Civil Action No. 05-10648

## OPPOSITION OF PLAINTIFF SCOTT SIEGAL TO DEFENDANT'S MOTION TO DISMISS COUNT I OF HIS COMPLAINT

The Plaintiff, Scott Siegal ("Plaintiff"), hereby submits this Opposition to

Defendant's Motion to Dismiss Count I of his Complaint ("Motion"). The Motion seeks a

dismissal of Count I of Plaintiff's Complaint on the ground that it is time-barred. Because

the Complaint was timely filed, the Motion should be denied.

## I.     INTRODUCTION

This action arises out the employment of the Plaintiff by the Defendant, Mascot

Petroleum Company, Inc. a subsidiary of Sunoco, Inc. (R&M) ("Defendant"). Plaintiff,

who worked for the Defendant for several months before his summary termination was

engineered by one of Defendant's managers, filed a race and national origin

discrimination complaint with the Massachusetts Commission Against Discrimination

("MCAD") on March 15, 2004. At the expiration of ninety days after the filing of his

complaint with the MCAD, the Plaintiff filed a race and national origin discrimination

complaint in the Essex County Division of the Massachusetts Superior Court Department,

Civil Action No. ESCV2005-00352-D. On April 1, 2005, the Defendant removed the action to this Court on the grounds of diversity of citizenship.

## II.    **STATEMENT OF FACTS**

The Plaintiff, a Caucasian, began his employment with the Defendant in December, 2002. During his tenure with the Defendant, the Plaintiff's job performance was always satisfactory until his summary termination on May 6, 2003. Immediately following his termination, the Plaintiff was replaced with a non-white person.

At all times relevant to this action, the Defendant maintained an Employee Handbook which was distributed to each employee, including the Plaintiff, at the time of their employment. The Employee Handbook contained a comprehensive Sexual Harassment/Discrimination Policy. The Sexual Harassment/Discrimination Policy includes a set of procedures which must be followed by each employee who believes that he or she has been the subject of sexual harassment/discrimination in the workplace. In relevant part, the Sexual Harassment/Discrimination Policy provides that …"if the complaint [of sexual harassment/discrimination] arises because of the actions of the employee's supervisor or manager, or if the employee is not comfortable contacting his or her manager, the aggrieved employee should contact the local Facility EEOC Coordinator or Human Resources Representative who, in turn, will advise the employee and consult with appropriate level of local management to resolve the issues surrounding the complaint…" and that the complaint may be …" verbal, written or both…" A copy of the relevant section of the Employee Handbook is attached hereto as **Exhibit A.**

Believing that his termination was racially motivated, the Plaintiff, in compliance with the procedures set out in the Defendant's Employee Handbook relative to its Sexual Harassment/Discrimination Policy, filed a complaint of race and national origin discrimination with Defendant's Human Resources Department in May, 2003, alleging that he had been discriminated against on the basis of his race and national origin. Upon receiving Plaintiff's complaint, Cheryl Smith, a member of Defendant's Human Resources Department, advised the Plaintiff that his complaint had been submitted to Defendant's Employee Ethics Complaint Department (hereinafter "Ethics Department") to be investigated and processed in accordance with Defendant's grievance procedure, and promised that a copy of the Ethics Department's findings would be sent to the Plaintiff at the conclusion of the grievance process.

During the next nine months, Plaintiff made numerous inquires regarding the decision, if any, of the Ethics Department regarding his complaint but was told that the complaint was being investigated. On each occasion he was told that the investigation was ongoing and that he should be patient because the investigators needed time to thoroughly investigate his allegation of race and national origin discrimination. See Affidavit of Scott Siegal attached hereto as **Exhibit B**, Paragraph 8.

After having waited for a response to his complaint to no avail, the Plaintiff contacted attorney Johannes Z. Zlahn on February 27, 2004 to inquire about his rights as a terminated employee of Defendant and was told that he had the right to file a complaint of discrimination with the MCAD, if he believed that he was terminated because of his race and national origin. Because Plaintiff had not retained attorney Zlahn at that time, there was no discussion of the details of his allegations. Subsequently, Plaintiff sent

Defendant a correspondence on March 1, 2004 demanding a decision on his complaint and threatening to file a complaint of discrimination with the MCAD unless he received a copy of the Ethics Department's report within five days from the date of his correspondence. A copy of that correspondence is attached hereto as **Exhibit C.**

On March 15, 2004, the Plaintiff filed a complaint of race and national origin discrimination with the MCAD. In the complaint, the Plaintiff alleged that he was terminated by Defendant and replaced with a non-white person. Plaintiff also alleged that after his termination, he filed a complaint with the Ethics Department, was told that his complaint would be investigated, that no findings were made by the Ethics Department and that "he continued to inquire about the findings of the investigation to no avail." A copy of the Complaint is attached hereto as **Exhibit D.**

### III.    ARGUMENT

### A.    PLAINTIFF'S COMPLAINT OF RACE AND NATIONAL ORIGIN DISCRIMINATION WAS TIMELY FILED

### 1.    Plaintiff's Pending Grievance Tolled The Statute of Limitations

As a general rule under Massachusetts Law, a complaint of unlawful discrimination must be filed with the MCAD within six months of the occurrence of the alleged discriminatory conduct.  M.G.L. Chapter 151B, Section 5; Carter v. Commissioner of Correction, 43 Mass App.Ct. 212, 217, 681 N.E.2d 1255, 1259 (1977); Eggert v. Cabot Corp., 21 MDLR 131, 138 (1999). The six-month statute of limitations does not apply, however, in instances where the aggrieved person enters into a grievance proceedings concerning the alleged discriminatory conduct within six months of the conduct complained of and subsequently files a complaint with the MCAD within six

months of the outcome of the grievance proceedings. See 804 Code of Massachusetts Regulations ("804 CMR"), Section 1.10(2) (2002)

In the instant case the undisputed facts, when weighed against the requirement of 804 CMR, Section 1.10(2), clearly shows that the six-month statute of limitations did not apply to the complaint Plaintiff filed with the MCAD on March 15, 2004. Here, Defendant's Sexual Harassment/Discrimination Policy requires an aggrieved employee to report any conduct in violation of the policy to a higher level of its management if the ..."complaint arises because of the actions of the employee's supervisor or manager..." See **Exhibit A** at Page 28. In compliance with this policy, the Plaintiff filed his complaint of discrimination with Defendant's Human Resources Department immediately after he was terminated by his manager and the Human Resources Department promised to investigate the complaint and contact the Plaintiff with its findings. Subsequently, the Plaintiff made several inquires about the status of the investigation but was assured that the complaint was being investigated and processed in accordance with Defendant's grievance procedure. See **Exhibit B** at Paragraphs 6 and 7. In reliance on the assurance by the Human Resources Department that his complaint was being investigated, the Plaintiff waited for nine months but received no report of the findings, if any, made by the alleged investigators.

Because of a lack of action by Defendant's Human Resources Department or the Ethics Department, the Plaintiff filed his complaint of discrimination with the MCAD on March 15, 2005 which was within six months or less of the lack of outcome of the grievance proceeding. Therefore, the pending grievance proceeding tolled the six-month statute of limitations and thus, Plaintiff's complaint was timely filed.

2.      **The Six Month-Statute of Limitations Should Be Equitably Tolled
Because The Defendant Encouraged the Plaintiff into Inaction**

"The limitations periods of Title VII and Chapter 151B are not jurisdictional but

rather are subject to equitable tolling, waiver, and estoppel." Zipes v. Trans World

Airlines, Inc., 455 U.S. 385, 392-398, 102 S.Ct. 1127, 1131-1135 (1982).Thus where a

defendant "encourages or cajoles [a] potential plaintiff into inaction that conduct may be

a basis of extending the limitations period as a matter of equity." Cherella v. Phoenix

Technologies, Ltd., 32 Mass. App.Ct. 919, 920, 856 N.E. 2d 29 (1992); See also, Manno

v. BJ's Wholesale Club, 150 F. Supp 2d 325 (D. Mass. 2001). In this case, the Plaintiff

was prevented from filing his complaint with the MCAD within six months of his

termination because of the repeated promise of the Defendant's Human Resources

Department that it was investigating his complaint and would contact him after the

completion of the investigation. While the promise to investigate Plaintiff's complaint

may not have been an act of cajoling, it certainly encouraged the Plaintiff to take no

action until the investigation had been completed. This is especially true since Plaintiff

did not contact an attorney until February 27, 2004 and as such did not know that he was

required to file a complaint with the MCAD within a specified period of time.

Moreover, the procedures set out in the Defendant's Employee Handbook relative

to the filing of a sexual harassment/discrimination complaint "allowed and even

encouraged" the Plaintiff to wait for a response from the Defendant before taking any

action as a result of his dissatisfaction with the outcome, or the lack thereof, of the

Defendant's investigation. See Mano at 333. By repeatedly telling the Plaintiff to wait for

a report of an investigation of his complaint, the Defendant deliberately lured him into a

false sense of security in that the promise of an investigation and a report led him to

believe that his interest was being adequately protected by a sympathy employer.

Furthermore, since the Defendant's antidiscrimination policy explicitly abhors any kind

of discrimination, the promise of an investigation led the Plaintiff to believe that the

policy was being implemented as stated in the Employee Handbook and that a favorable

decision would be forthcoming.

## IV.    **CONCLUSION**

For all the foregoing reasons, the Plaintiff respectfully requests that the Motion be
denied.

Respectfully Submitted,

Scott Siegal
By his attorney,

Regan Associates, Chartered

Johannes Z. Zlahn (BBO# 565218)
45 School Street, Third Floor
Boston, MA 02108
(617) 367-1100, Ext. 710

# EXHIBIT A

# MASCOT Petroleum Employee Handbook For Company Operations

SunR-42550-E

August, 1999



If you are personally physically, severely attacked:

Be *PHYSICALLY* and *MENTALLY* prepared to defend yourself if necessary. Start now by taking an inventory of your personal skills and resources. Think about how you usually react in crises and stress situations. What is your style? Do you FIGHT in self-defense? RUN? CRY? FREEZE? Think about whether you want to learn to respond differently. Think through various strategies. Talk with other people and Security about ways to handle confrontations and rehearse alternatives. By preparing in this way, you will have many more options to choose from if you are ever in a high risk situation. Remember: Only under severe circumstances should you ever consider physically engaging another person and only when it is clearly in self-defense. Your physical safety and also that of others is more important than anything else.

- There is no single, correct way to respond to a severe, physical confrontation.
- When faced with danger, trust yourself. Stay as calm as possible. Think rationally, without panic. Choose what works best for you:
    1. Non-resistance to prevent physical violence
    2. Negotiating
    3. Stalling for time
    4. Distracting or diverting the assailant, then fleeing
    5. Verbal assertiveness
    6. Screaming to attract attention and help from people nearby
    7. Physically resisting and fighting the attacker

If your first choice does not work, try another option. Observe as much as you can about the identity, clothing, and behaviors of the assailant. This information will be useful to you later in making a police report.

# Equal Employment Opportunity

It is Company policy to recruit and select the best qualified personnel at all its locations, to provide equal employment opportunities for all employees, including placement, upgrading, promotion, demotion, transfer, layoff, termination, rates of pay or other form of compensation, benefits, without regard to race, color, sex, age, national origin, religion, disability, veteran's status, or other protected class as defined by law.

26

# Sexual Harassment/Discrimination Policy

Sunoco, Inc. and its subsidiaries prohibits all forms of sexual harassment of employees and is committed to providing an environment free of sexual-related actions which negatively impact the employees' ability to do their jobs.

## Purpose

The purpose of this Policy is to fulfill the Company's commitment to maintaining a workplace where each employee's privacy and personal dignity are respected and protected from offensive or threatening behavior. Sexual harassment is a form of employment discrimination and is prohibited by law.

## Scope

This Policy applies to Sunoco, Inc. (R&M) and its Company Operations subsidiary (MASCOT).

## Responsibility

Managers and supervisors have a responsibility to communicate the Company's position on sexual harassment to all employees and for ensuring compliance with this policy in their areas of responsibility. Managers and supervisors are also required to consult with the Human Resources Representative at 215-246-8520 or 215-246-8837 or FAX 1-800-786-9026 to seek assistance in complying with requirements of this policy and other matters pertaining to equal employment opportunity.

## Definitions

The United States Equal Employment Opportunity Commission has issued specific guidelines concerning sexual harassment. Essentially, these guidelines state that "Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature" will be considered harassment when:

A.  "Submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment.

B.  "Submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, or

C.  "Such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment."

*Administration*

If any employee believes that he or she has been subjected to conduct which may constitute sexual harassment, that employee should report the offensive conduct to his or her immediate supervisor or manager. If a complaint arises because of the actions of the employee's supervisor or manager, or if the employee is not comfortable contacting his or her manager, the aggrieved employee should contact the local facility EEO Coordinator or Human Resources Representative who, in turn, will advise the employee and consult with the appropriate level of local management to resolve the issues surrounding the complaint. It is imperative that all parties involved in an investigation of alleged sexual harassment maintain strict confidentiality to respect the privacy of all individuals involved.

After an investigation of the employee's complaint has been concluded, the employee will be advised of the results of that investigation. Based on a finding of reasonable evidence that sexual harassment has occurred, the Company will take the necessary and appropriate disciplinary action against the offending party.

Employees are assured that there will be no retaliation against any employee who makes a complaint with the reasonable belief that sexual harassment has occurred.

| Human Resource contact #: | 215-246-8837 | 215-246-8780 |
| | 215-246-8520 | FAX 1-800-786-9026 |
| Hotline Number: | 1-800-228-5687 | |

# Open Communication
# (Appeal Process)

It is the Company's desire to administer reasonably and equitably all of its policies and procedures. When a question or problem arises, it is the mutual advantage of everyone concerned that an employee be given the opportunity to be heard and to receive a reasonable response from the Company. The following procedure allows an employee to register dissatisfaction and, if necessary, to communicate to higher levels of authority where the problem will be heard and given a response.

*First Step*

An employee should discuss the facts of the situation with the manager, immediately.

*Second Step*

If the employee is not satisfied with the response given by the manager, the facts should be discussed with the next level of management (the Area Manager), immediately. This can be verbal, written or both. No retaliation will be taken against an employee for using any step to this procedure.

*Third Step*

If the employee is not satisfied with the response given by the second level of management, the complete facts should be submitted in writing to the respective Division Operations Manager and Human Resources.

## Sunoco Division Offices

**Mid America (OH MI KY)**
Sunoco, Inc.
1708 Farr Drive
Dayton, OH 45404-2103
Fax 513-223-8678

**Western PA & Buff NY**
Sunoco, Inc.
5733A Butler Street
Pittsburgh, PA 15201
Fax 412-784-3488

**Sunoco, Inc. (R&M)**
Company Operations H.R. Dept.
Ten Penn Center, 22nd Floor
1801 Market Street
Philadelphia, PA 19103-1699
Fax 800-786-9026

**New York (Syracuse & Rochester Areas)**
550 Solar Street
Syracuse, NY
Fax 315-424-9395

**Eastern Division Office NE & NJ**
Sunoco, Inc.
1028 Stelton Road
Piscataway, NJ 08854-4398
Fax 732-981-0928

**Eastern PA**
Sunoco, Inc.
4041 Market Street
Twin Oaks, PA 19014-3197
Fax 610-859-5425

**Central/Northern PA**
Sunoco, Inc.
5145 Simpson Ferry Road
Mechanicsburg, PA 17055

The Division Operations Manager will review the issues with the appropriate sources in the situation (Area Manager, Store Manager, Human Resources and others deemed necessary) and have a response given to the employee.

The decisions at this step will be final. In all cases, the employee may express their views in writing for inclusion in the file.

During the problem solving process, the Area Manager, Division Operations Manager or Human Resources will determine if or when further corporate resources should be utilized. Human Resources will counsel management and the employee on policy, recordkeeping and communication issues.

# EXHIBIT B

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SCOTT SIEGAL,<br>        Plaintiff | * | |
| | * | |
| vs. | * | |
| | * | Civil Action No. 05-10648 |
| MASCOT PETROLEUM COMPANY, INC., | * | |
| A SUBSIDIARY OF SUNOCO, INC (R&M), | * | |
|        Defendant | * | |
| | * | |

## AFFIDAVIT OF SCOTT SIEGAL

I, SCOTT SIEGAL, UNDER OATH, DEPOSE AND STATE THE FOLLOWING:

1.    I am the Plaintiff in the above-entitled action. I presently reside at 9 Abbot Road, Gloucester, Essex County, Massachusetts.

2.    I submit this affidavit in support of my Opposition to the Defendant's Motion to Dismiss my Complaint for race and national origin discrimination.

3.    I began my employment with the Defendant in December, 2002 as a sales associate. Throughout my tenure with the Defendant, I performed my job responsibilities satisfactorily and never received any warnings regarding my job performance until April, 2003 and subsequently.

4.    In or about February, 2003 a co-worker of mine warned me to "watch [my] back" because he feared that I would be falsely accused and that an individual named "Ishmael" was returning to the U.S." to get his job back.

5.    On May 6, 2003, my manager falsely accused me of cash shortage in the amount of $23.00 and terminated my employment. Immediately after my termination, I filed a complaint with the Defendant's Human Resources Department, alleging that I had been discriminated against on the basis of my race and national origin.

6.    A few days after I filed the complaint of discrimination with the Human Resources Department, I called to inquire about the status of my complaint and spoke with Cheryl Smith, a member of the

Human Resources department. During my telephone conversation with Cheryl Smith, she told me that my complaint had been sent to the Defendant's Employee Ethics Complaint Department for processing and investigation and assured me that a copy of their findings would be sent to me when the investigation was completed.

7.      During the next nine months, I called Cheryl Smith several times to inquire about the status of the investigation. She or other employees of the Human Resources Department assured me on each occasion that the investigation was ongoing and that a report was forthcoming, and told me to be patient because the investigators needed time to thoroughly investigate my allegation of race and national origin discrimination.

8.      After having waited nine months for a response from the Human Resources Department to no avail, I decided to contact an attorney to get some advice about my rights. Thus, on February 27, 2004, I contacted attorney Johannes Z. Zlahn who was then employed by the Law Offices of Benjamin J. Murawski. During my meeting with attorney Zlahn on February 27, 2005, he told me that if I believed that I was terminated because of my race and national origin, then I must file a complaint with the Massachusetts Commission Against Discrimination ("Commission") and showed me where the Commission is located. Because I still believed that Human Resources Department personnel would provide me with a report of their findings as promised, I sent Cheryl Smith a letter on March 1, 2004 requesting that a copy of their report be sent to me within five days from the date of the letter. I also told her that if I did not hear from her within the time specified in the letter, I would file a complaint with the Commission.

9.      On March 15, 2004, I took attorney Zlahn's advice and filed a complaint with the Commission. I did not file a complaint of discrimination with the Commission within six months of my termination because I did not know of the Commission's existence nor did I know that one must file a complaint with the Commission within six months of the occurrence of an alleged discriminatory act.

10.     I did not contact an attorney immediately because according to the Employee Handbook given to me by the Defendant at the time of my employment, any employee who believes that he or she has been the subject of discrimination must file a complaint with management and I complied with that requirement by filing my complaint with the Human Resources Department. In addition, I did not contact an attorney until February 27, 2004 because I relied on the promise made to me by Cheryl Smith and others that they were investigating my complaint and would furnish me with a copy of their findings upon completion of the investigation.

11.     I would have contacted an attorney sooner than February 27, 2004 had Cheryl Smith and other Human Resources personnel not promised that they were investigating my complaint of discrimination. This promise prevented me from retaining an attorney in a timely manner to protect my rights.

        SIGNED AND SWORN TO UNDER THE PAINS AND PENALTIES OF PERJURY THIS 28TH DAY OF APRIL, 2005.

# EXHIBIT C

SCOTT H. SIEGAL
139 Park Street, #3
Beverly, MA 01915


March 1, 2004


Sunoco Inc.
1801 Market Street
Philadelphia, PA 19103-1699

ATTN: Cheryl Smith, Human Resources/Operations

Dear Ms. Smith:

I filed a complaint for racial discrimination with Sunoco Inc. back in May of 2003. I was informed by you that I would receive a copy of the investigation report after it has gone through your grievance process. Since then I have inquired numerous times by telephone with your company as to when I would receive the report and have been told by you and other employees of Sunoco that it is in the Employee Ethics Complaint Department and that the report would be sent to me upon completion of the grievance process.

It has been approximately eight months and I am still waiting for the results. If I do not receive this report nor hear from you within five (5) days of this letter I will file a complaint with the Massachusetts Commission Against Discrimination.


Very truly yours,

Scott H. Siegal

# EXHIBIT D

**The Commonwealth of Massachusetts**
**Commission Against Discrimination**
**One Ashburton Place , Boston, MA 02108**
**Phone:  (617) 994-6000 Fax:  (617) 994-6024**

3/15/2004

RE: Scott   Siegal   vs. Macot Ptroleum Co., Inc. d/b/a/
Sunoco
MCAD Docket Number:  04BEM00651
EEOC/HUD Number: 16CA401159

Dear Complainant Party:

Please be advised that the Massachusetts Commission Against Discrimination (MCAD) has assigned
Pamela Brooks to investigate the above referenced complaint of discrimination.  The Commission's
investigator will review the allegations in the complaint and will keep the parties informed of developments
arising from that investigation.

Please indicate the following by initialing the correct statement:

_____ I am represented by an attorney in this matter. If you initial this statement, you must submit to the
investigator a Notice of Appearance from your attorney within 10 days of the date of this letter in order to
be considered represented by counsel.

_SS_ I am not represented by an attorney in this matter.

Please note that if your situation changes you must notify the Commission immediately.  Also, failure to
accurately complete this statement may result in your claim being administratively closed for failure to
cooperate with the Commission's investigation.

In order to reduce the time necessary to investigate and resolve complaints of discrimination, the  MCAD
schedules  an Investigative Conference with the parties  shortly after  the complaint  is filed.  Information
about the Conference is included with this notice.

An Investigative Conference regarding the above complaint will be held at the Commission's  Office, One
Ashburton Place , Boston, MA at 01:00 PM on 05/19/04.  You are required to attend this conference and
your failure to do so will be taken as representing a lack of interest on your part in pursuing this claim.

If you have any questions pertaining to the Investigation, please contact Pamela Brooks at (617)-994-6090.

Very truly yours,

Pamela Brooks
Investigator

Cc:

MCAD Docket Number 04BEM00651, Serve Complainant – With Investigative Conference

**The Commonwealth of Massachusetts**
**Commission Against Discrimination**
**One Ashburton Place , Boston, MA 02108**
**Phone: (617) 994-6000 Fax: (617) 994-6024**

---

MCAD DOCKET NUMBER: 04BEM00651           EEOC/HUD CHARGE NUMBER: 16CA401159
FILING DATE: 03/15/04                                          VIOLATION DATE: 01/08/04

--------------------------------------------------------------------------------------------------------

Name of Aggrieved Person or Organization:
Scott Siegal
139 Park Street
Beverly, MA 01915
Primary Phone: (978)969-2996 ext.  _____


--------------------------------------------------------------------------------------------------------
Named is the employer, labor organization, employment agency, or state/local government agency who
discriminated against me:
Macot Ptroleum Co., Inc. d/b/a/ Sunoco
Human Resources
437 Rantoul Street
Beverly, MA 01915



No. of Employees:          20 +

Work Location: Beverly
--------------------------------------------------------------------------------------------------------
Cause of Discrimination based on:
Race, Color, White (Non-Hispanic).
--------------------------------------------------------------------------------------------------------
**The particulars are:**
I, Scott  Siegal, the Complainant believe that I  was discriminated against by Macot Ptroleum Co., Inc.
d/b/a/ Sunoco, on the basis of Race, Color. This is in violation of M.G.L. 151B Section 4 Paragraph 1 and .

I began working for the Respondent, Sunoco, in December 2002, as a sales associate.  I performed my job
well and never received warnings regarding my performance until April 2003.  On April 8, 2003, I had an
accident at home, in which I suffered a back injury.  Although I experienced pain I went in to work that
day.  Approximately two hours later I realized that I needed to get to the hospital because I was in too much
pain.

In or around February 2003, a co-worker, Gene (LNU) stated " watch your back, I've seen this sort of thing
before, people will be falsely accused." and that "Ishmael was returning to the US, would get his job back
and one of us would be fired."  On April 8, 2003, I provided a note to my Manager, to inform him that I
would be out of work for two days pursuant to my doctor's orders.  I returned to the doctor on April 10,
2003 and was reevaluated by my physician who ordered that I stay out of work until April 14, 2003.  On
May 5, 2003, my doctor ordered that I stay out of work until May 11, 2003.  My Manager terminated my
employment on May 6, 2003, for a cash shortage of $23.00.  I was never issued any warnings before this,
however, my manager produced warnings that were farley written against me that I never seen before.
After my termination, I became aware that Ismal had replaced me.

I complained to the ethics department in May 2003, regarding the manner in which I was terminated.  I was
told that an investigation will be conducted, but Respondent never followed up to inform me of its findings.
I continued to inquire about the findings of the investigation to no avail.  I believe that Respondent's reason

MCAD Docket Number 04BEM00651, Complaint

for terminating against me was not the real reason; the real reason was that I am an American, in violation of state and federal statutes.

----------------------------------------------------------------------------------------------------------------------

I swear or affirm that I have read this complaint and that it is true to the best of my knowledge, information and belief.

(Signature of Complainant)

SWORN TO AND SUBSCRIBED BEFORE ME ON THIS DAY of 3/15/2004.

NOTARY PUBLIC: Allison E. Hope

SIGNATURE NOTARY PUBLIC:

MY COMMISSION EXPIRES: 10/1/04

MCAD Docket Number 04BEM00651, Complaint