UNITED STATE DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| SCOTT SIEGAL, | * | |
| Plaintiff | * | |
| | * | |
| vs. | * | |
| | * | Civil Action No. 05-10648 |
| MASCOT PETROLEUM COMPANY, INC, | * | Hon. George A. O'Toole, Jr. |
| A SUBSIDIARY OF SUNOCO, INC (R&M) | * | |
| Defendant | * | |
| | * | |

## ASSENTED-TO MOTION FOR LEAVE TO FILE A
## SUR-REPLY TO DEFENDANT'S REPLY MEMORANDUM

**NOW COMES** the Plaintiff, Scott Siegal, and hereby moves this Honorable

Court for leave to file a Sur-Reply to Defendant's Reply Memorandum. In support hereof,

Plaintiff states the following:

1.   The Defendant's Reply Memorandum misstates and incorrectly interprets
     Massachusetts law of employment contracts.

2.   The Reply Memorandum misconstrues the tolling provision of 804 CMR 1.10(2).

3.   Plaintiff's Rebuttal may be useful to the Court in resolving the issues raised by the
     Motion to Dismiss and Plaintiff's Opposition to same.

**WHEREFORE,** the Plaintiff respectfully requests that this Honorable Court allow his

Motion for Leave to File a Sur-Reply.

ASSENTED TO:

Mascot Petroleum Company, Inc.
A Division of Sunoco, Inc. (R&M)
By its attorneys,

Plaintiff, Scott Siegal
By his attorney,

Regan Associates, Chartered

_David J. Kerman (BBO #269370)_
_Richard W. Paterniti (BBO #645170_
JACKSON LEWIS LLP
75 Park Plaza
Boston, MA 02116
(617) 367-0025

Johannes Z. Zlahn (BBO# 565218
45 School Street, Third Floor
Boston, MA 02108
(617) 367-1100, Ext. 710

Dated: May 26, 2005

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| SCOTT SIEGAL, <br>           Plaintiff <br><br> vs. <br><br> MASCOT PETROLEUM COMPANY, INC., <br> A SUBSIDIARY OF SUNOCO, INC (R&M), <br>           Defendant | * <br> * <br> * <br> * <br> * <br> *      Civil Action No.: 05-10648 <br> *      Hon. George A. O'Toole, Jr. <br> * <br> * <br> * |

## SUR-REPLY MEMORANDUM OF PLAINTIFF
## TO DEFENDANT'S REPLY MEMORANDUM

### I.    INTRODUCTION

On or about April 20, 2005, Defendant, Mascot Petroleum Company, Inc., a Subsidiary of Sunoco, Inc. (R&M) ("Defendant") moved to dismiss Plaintiff, Scott Siegal's ("Plaintiff"), Complaint. On or about April 28, 2005, Plaintiff filed his Opposition to the Motion to Dismiss. On or about May 18, 2005, Defendant filed a Reply Memorandum to Plaintiff's Opposition to Defendant's Motion to Dismiss. Plaintiff now submits this sur-reply, in order to respond to the various legal and factual inaccuracies and distortions contained in the Reply Memorandum.

### II.    ARGUMENT

### A.    THE STATUTE OF LIMITATIONS IN THIS CASE
### IS TOLLED PURSUANT TO 804 CMR 1.10(2)

1.    **Plaintiff Is Entitled To The Tolling Set Forth In 804
      CMR 1.10(2) Because The Provisions Of The Employee
      Handbook Constitute Binding Employment Contract**

Defendant first argues that the statute of limitations for filing a complaint of

discrimination under Massachusetts General Laws Chapter 151B ("Chapter 151B") is not

tolled in this case pursuant to 804 CMR. In support of this argument, Defendant asserts

that ..."there is no employment contract on which Plaintiff may rely..." [because the

policy contained in the Employee Handbook] ..."was not part of a negotiated

employment agreement." In making this argument, Defendant relies exclusively on cases

involving union grievances filed pursuant to collective bargaining agreements between an

employee's union and his or her employer. See Reply Memorandum at 3. However,

Defendant's reliance on such cases in support of its argument is misguided, because while

collective bargaining agreements are one form of employment contract, they certainly are

not the only form of employment contract recognized by law.

Under Massachusetts law, an employer's policies, procedures and protocols may

give rise to contract terms where, as here, the employee remained in the employer's

employ after receipt of such policies, procedures and protocols, see e.g., O'Brien v. New

England Telephone & Telegraph Co., 422 Mass. 686, 694-695 (1996) ("an employer's

personnel manual, distributed to employees from time to time and which contained no

reservation of rights or disclaimer of obligations, granted the employee rights beyond

those of an at-will employee, especially with respect to rights under the disciplinary

procedures set therein.") and where, as here, the employee reasonably believed that said

policies, procedures and protocols were mutually binding. See Derrig v. Wal-Mart Stores,

Inc., 942 F. Supp. 49, 55 (D. Mass. 1996) (personnel manual gave rise to contract terms

since employee reasonably believed that "terms of manual were binding on him and employer."); Ferguson v. Host International, Inc., 53 Mass. App. Ct. 96, 101-103 (2001) ("in circumstances of employer-employee relationship, it could not be said as a matter of law that employee could not have reasonably believed that employer would adhere to the portions of a manual establishing a system of progressive discipline and the guarantee of fair treatment, rather than apply them when it chose.")

Here, Defendant routinely distributes a personnel manual entitled "Mascot Petroleum Employee Handbook For Company Operations" (hereinafter "Employee Handbook") to employees, including Plaintiff, at the time of their employment. The Employee Handbook sets forth detailed mandatory conduct, mutual obligations, promises of treatment and procedures, which are intended to govern and form a basis of the employment relationship. The Employee Handbook at issue in this case contains several policies, including "Policy of Equal Employment Opportunity", "Sexual Harassment/Discrimination Policy" and "Open Communication (Appeal Process)," which expressly abhor discrimination on the basis of "race, color, sex, national origin, religion, disability, veteran's status, or other protected class as defined by law" and sets forth elaborate and detailed procedures that employees and managerial staff are required to strictly adhere to whenever an allegation of a prohibited conduct is made. For instance, the "Open Communication (Appeal Process)" lists three steps which an employee must follow when he or she has been the subject of unlawful discrimination and/or sexual harassment, provides telephone numbers that the employee may use to file a complaint of discrimination and/or sexual harassment, and lists several offices that the aggrieved employee may contact. It also sets forth procedures which managers and supervisors must

follow whenever an employee alleges that he or she has been unlawfully discriminated against or sexually harassed, and provides specific telephone numbers to be utilized. See Employee Handbook attached hereto as **Exhibit A,** Pages 26-29.

Accordingly, the Employee Handbook constitutes an employment contract if Plaintiff can prove that he remained in Defendant's employ after he received it and reasonably believed that the policies, procedures and protocols set forth therein were mutually binding.

2.     <u>**The Employee Handbook Constitutes An Employment Contract Because Plaintiff Remained In Defendant's Employ After Receiving A Copy Of The Same And Because He Believed That Its Provisions Were Mutually Binding**</u>

As stated in Plaintiff's Opposition to Defendant's Motion to Dismiss, Plaintiff began his employment with Defendant in December, 2002 and remained in Defendant's employ until his summary termination in May, 2003. At the time of hire, he was given a copy of the Employee Handbook at issue in this action. Hence, he remained in Defendant's employ after receiving the policies and procedures set forth in the Handbook. Moreover, because Plaintiff reasonably believed that the provisions of the Employee Handbook were mutually binding, he followed the policies, procedures and protocols set forth therein by filing his complaint with the Human Resources Department. His belief was reasonable because, in addition to requiring employees to follow the procedures and policies set forth above, the Employee handbook requires managers and supervisors to adhere to its provisions and requires the Division Operations Manager to "review the issues [involved] with the appropriate sources in the situation…and have a response given to the employee." See **Exhibit A** at 29. Hence, the Employee Handbook constitutes an employment contract, the terms of which are enforceable. See <u>Ferguson</u>, 53 Mass.

4

App. Ct. at 105 (judgment dismissing plaintiff's claim for breach of contract reversed due

to employer's failure to adhere to personnel manual's system of progressive discipline.)

3.     **The Tolling Provision of 804 CMR 1.10(2) Should Not Be Construed
To Limit Its Application To Cases Involving Grievance Proceedings
Entered Into Pursuant To A Collective Bargaining Agreement
Because There Is Nothing Express Or Implied Therein That
Would Permit Such Construction, And Because Such
Construction Would Defeat The Purpose of Chapter 151B**

Defendant next argues that the equitable tolling provision of 804 CMR 1.10(2) is

only applicable to cases in which grievances are filed pursuant to collective bargaining

agreements. This argument is absurd, for two reasons. First, there is nothing express or

implied in 804 CMR 1.10(2) that would limit its application to such cases. 804 CMR

1.10(2) refers to "grievance proceedings" entered into pursuant to "an employment

contract;" it makes no reference to collective bargaining agreement made between an

employee's union and management. Therefore, such "employment contract" may include

provisions of employee handbooks as stated above or other written or oral contract

between an employer and its employees, which is devoid of a collective bargaining

agreement. Here, Defendant established a set of grievance procedures that must be

followed in instances in which an employee believes that he or she has been subjected to

unlawful discrimination. The fact that the procedures were not established pursuant to a

collective bargaining agreement is of no consequence because employers and employees

may elect to enter into employment contracts that are outside the realm of collective

barging agreements. In these days of declining unionization of business establishments, a

public policy or legal precedent based on Defendant's argument would exclude fifty

percent (50%) or more of the workforce from the protection of 804 CMR 1.10(2). Indeed,

Defendant cites no authority to support the proposition that 804 CMR 1.10(2) should only apply to cases wherein grievances are filed pursuant to collective bargaining agreements.

Secondly, Chapter 151B is a remedial statute intended to protect the classes of persons named therein. See, e.g. College-Town Division of Interco, Inc. v. MCAD, 400 Mass. 156, 165 (1987)("The provisions of Chapter 151B should be construed liberally for accomplishment of the purposes thereof") Therefore, to limit the tolling provision of 804 CMR 1.10(2) to cases involving collective bargaining agreements would defeat the purpose of the statute and thereby contravene the legislative intent.

## 3.    Defendant Encouraged And/Or Misled Plaintiff Into Inaction

Finally, Defendant argues that it did not encourage Plaintiff into inaction by its several promises of an ongoing investigation of Plaintiff's allegation of discrimination and several promises to provide Plaintiff with the results of the alleged investigation. Defendant does not deny that it made such promises during a period of more than nine months or that Plaintiff filed a complaint with Defendant's Human Resources Department pursuant to the grievance procedures set forth in the Employee Handbook. Instead, Defendant argues only that such promises were insufficient to discourage Plaintiff from timely filing a complaint of discrimination with the MCAD. Relying on the holding of Morris v. The Government Development of Puerto Rico, 27 F.3d 746 (1st Cir. 1994), Defendant concludes that Plaintiff is not entitled to equitable tolling. Reply Memorandum at 5.

Apparently Defendant believes that a plaintiff is entitled to equitable tolling only if he or she proves lack notice of an employer's discriminatory animus and also proves that the employer actively misled him or her. This argument is misleading because it

disregards the fact that courts have held that factors other than lack of notice and employer's misleading conduct may be invoked to toll the limitations period of remedial statutes such as Chapter 151B. See Kale v. Combined Ins. Co. of America, 861 F.2d 746, 752 (1st Cir.1988). Such other factors include: "lack of constructive knowledge of the filing requirement; diligence in pursuing one's rights; absence of prejudice to the defendant; and a plaintiff's reasonableness in remaining ignorant of the notice requirement." Kale, 861 F.2d at 752 and cases cited.

In the instant case, Plaintiff diligently pursued his rights by complying with Defendant's Policies and procedures. Here, Plaintiff, in compliance with the grievance procedures set forth in the Employee Handbook, filed his complaint with Defendant's Human Resources Department for redress of what he believed was an egregious wrong committed against him by his manager; he was repeatedly told that his complaint was being investigated and that he should wait for the investigation to be concluded. He was also told that at the conclusion of the investigation, a copy of the results of the investigation would be provided to him as required by the Employee Handbook.

Although the Human Resources Department led Plaintiff to believe that it was investigating his allegation of discrimination, no such investigation was made, as evidenced by the lack of any findings or report of same. Under these circumstances, therefore, there is no doubt that Plaintiff diligently pursued his rights but was encouraged by Defendant's promises into inaction. Additionally, by asserting that an investigation of Plaintiff's allegation of discrimination was ongoing and instructing Plaintiff to wait for the results of the investigation when, in fact, no such investigation was ongoing, Defendant actively misled Plaintiff into inaction, to his detriment. Such promises misled

7

Plaintiff into believing "that a meaningful internal process was ongoing and that remediation was forthcoming." See, e.g. <u>Ruffino v. State Street Bank and Trust Company</u>, 908 F. Supp. 1019, 1041 n.41 (D. Mass. 1995).

Moreover, Defendant has not and cannot demonstrate any possible prejudice it would suffer as a result of Plaintiff's late filing of his complaint with the MCAD. As has been stated by various courts, the purpose of requiring that allegations of discrimination be filed with administrative bodies within a prescribed period of time is "...to give early notice to the employer of possible litigation..." <u>Kale</u>, 861 F.2d at 753 and cases cited. However, this purpose "may be outweighed by considerations which justify equitable tolling." See <u>Christo v. Edward G. Boyle Ins. Agency, Inc.</u> 402 Mass. 815, 817 (1988). Here, Plaintiff filed his complaint of discrimination with Defendant immediately upon occurrence of the discriminatory act and waited more than nine months for Defendant to internally investigate his allegations. Thus, Defendant was aware of Plaintiff's claim from its inception and knew or should have known that a failure to internally resolve the claim would lead to litigation.

Even if Defendant had not been aware of this matter as stated above, Plaintiff would still be entitled to equitable tolling for the reasons stated previously and for the fact that Defendant will have the opportunity to defend this claim on its merits, employing all defenses available to it at no extra costs. Thus, there is no prejudice to Defendant.

Likewise, as stated in Plaintiff's Opposition to Defendant's Motion to Dismiss, he lacked actual or constructive knowledge of the filing requirement, and as a result, made several attempts, including a last ditch effort to pursue his claim with the Human Resources Department in hopes of resolving this matter. After he filed his claim with the

Human Resources Department, Plaintiff was never told to seek redress in a court or with an administrative body, and nowhere in the Employee Handbook is it stated that an employee who is dissatisfied with Defendant's investigation of a claim of discrimination may seek redress in court or with an administrative body. See <u>Kale</u>, 861 F.2d at 752 and cases cited (failure of employer to post informational EEOC notices required by ADEA may be ground for equitable tolling at least until employee receives actual notice of his statutory rights or retains an attorney.) As a result, Plaintiff believed that his options were limited to the procedures set forth in the Employee Handbook.

## III.    **CONCLUSION**

For the foregoing reasons and for the reasons stated in Plaintiff's Opposition to Defendant's Motion to Dismiss, Plaintiff respectfully requests that this Honorable Court deny Defendant's Motion to Dismiss.

<div style="margin-left: 40%;">

Plaintiff, Scott Siegal
By his attorney,

Regan Associates, Chartered

_____
Johannes Z. Zlahn (BBO# 565218-B)
45 School Street, Third Floor
Boston, MA 02108
(617) 367-1100, Ext. 710

</div>

Dated: May 26, 2005

# EXHIBIT A

# MASCOT Petroleum Employee Handbook For Company Operations

SunR-42550-E

August, 1999



**Violence**

- If you are personally physically, severely attacked:

  Be *PHYSICALLY* and *MENTALLY* prepared to defend yourself if
  necessary. Start now by taking an inventory of your personal skills
  and resources. Think about how you usually react in crises and stress
  situations. What is your style? Do you FIGHT in self-defense? RUN?
  CRY? FREEZE? Think about whether you want to learn to respond
  differently. Think through various strategies. Talk with other people
  and Security about ways to handle confrontations and rehearse alter-
  natives. By preparing in this way, you will have many more options
  to choose from if you are ever in a high risk situation.

  Remember: Only under severe circumstances should you ever con-
  sider physically engaging another person and only when it is clearly
  in self-defense. Your physical safety and also that of others is more
  important than anything else.
- There is no single, correct way to respond to a severe, physical confrontation.
- When faced with danger, trust yourself. Stay as calm as possible. Think
  rationally, without panic. Choose what works best for you:
    1. Non-resistance to prevent physical violence
    2. Negotiating
    3. Stalling for time
    4. Distracting or diverting the assailant, then fleeing
    5. Verbal assertiveness
    6. Screaming to attract attention and help from people nearby
    7. Physically resisting and fighting the attacker

If your first choice does not work, try another option. Observe as much as you
can about the identity, clothing, and behaviors of the assailant. This infor-
mation will be useful to you later in making a police report.

# Equal Employment Opportunity

It is Company policy to recruit and select the best qualified personnel at all its
locations, to provide equal employment opportunities for all employees,
including placement, upgrading, promotion, demotion, transfer, layoff, termi-
nation, rates of pay or other form of compensation, benefits, without regard to
race, color, sex, age, national origin, religion, disability, veteran's status, or
other protected class as defined by law.

26

# Sexual Harassment/Discrimination Policy

Sunoco, Inc. and its subsidiaries prohibits all forms of sexual harassment of
employees and is committed to providing an environment free of sexual-
related actions which negatively impact the employees' ability to do their jobs.

*Purpose*
The purpose of this Policy is to fulfill the Company's commitment to main-
taining a workplace where each employee's privacy and personal dignity are
respected and protected from offensive or threatening behavior. Sexual harass-
ment is a form of employment discrimination and is prohibited by law.

*Scope*
This Policy applies to Sunoco, Inc. (R&M) and its Company Operations sub-
sidiary (MASCOT).

*Responsibility*
Managers and supervisors have a responsibility to communicate the Com-
pany's position on sexual harassment to all employees and for ensuring
compliance with this policy in their areas of responsibility. Managers and
supervisors are also required to consult with the Human Resources Represen-
tative at 215-246-8520 or 215-246-8837 or FAX 1-800-786-9026 to seek
assistance in complying with requirements of this policy and other matters
pertaining to equal employment opportunity.

*Definitions*
The United States Equal Employment Opportunity Commission has issued
specific guidelines concerning sexual harassment. Essentially, these guidelines
state that "Unwelcome sexual advances, requests for sexual favors, and other
verbal or physical conduct of a sexual nature" will be considered harassment
when:

A.  "Submission to such conduct is made either explicitly or implicitly a term
    or condition of an individual's employment.

B.  "Submission to or rejection of such conduct by an individual is used as the
    basis for employment decisions affecting such individual, or

C.  "Such conduct has the purpose or effect of unreasonably interfering with an
    individual's work performance or creating an intimidating, hostile, or
    offensive working environment."

*Administration*

If any employee believes that he or she has been subjected to conduct which may constitute sexual harassment, that employee should report the offensive conduct to his or her immediate supervisor or manager. If a complaint arises because of the actions of the employee's supervisor or manager, or if the employee is not comfortable contacting his or her manager, the aggrieved employee should contact the local facility EEO Coordinator or Human Resources Representative who, in turn, will advise the employee and consult with the appropriate level of local management to resolve the issues surrounding the complaint. It is imperative that all parties involved in an investigation of alleged sexual harassment maintain strict confidentiality to respect the privacy of all individuals involved.

After an investigation of the employee's complaint has been concluded, the employee will be advised of the results of that investigation. Based on a finding of reasonable evidence that sexual harassment has occurred, the Company will take the necessary and appropriate disciplinary action against the offending party.

Employees are assured that there will be no retaliation against any employee who makes a complaint with the reasonable belief that sexual harassment has occurred.

| | | |
|---|---|---|
| Human Resource contact #: | 215-246-8837 | 215-246-8780 |
| | 215-246-8520 | FAX 1-800-786-9026 |
| Hotline Number: | 1-800-228-5687 | |

# Open Communication
# (Appeal Process)

It is the Company's desire to administer reasonably and equitably all of its policies and procedures. When a question or problem arises, it is the mutual advantage of everyone concerned that an employee be given the opportunity to be heard and to receive a reasonable response from the Company. The following procedure allows an employee to register dissatisfaction and, if necessary, to communicate to higher levels of authority where the problem will be heard and given a response.

*First Step*

An employee should discuss the facts of the situation with the manager, immediately.

*Second Step*

If the employee is not satisfied with the response given by the manager, the facts should be discussed with the next level of management (the Area Manager), immediately. This can be verbal, written or both. No retaliation will be taken against an employee for using any step to this procedure.

28

*Third Step*

If the employee is not satisfied with the response given by the second level of management, the complete facts should be submitted in writing to the respective Division Operations Manager and Human Resources.

<div align="center">Sunoco Division Offices</div>

**Mid America (OH MI KY)**
Sunoco, Inc.
1708 Farr Drive
Dayton, OH 45404-2103
Fax 513-223-8678

**Western PA & Buff NY**
Sunoco, Inc.
5733A Butler Street
Pittsburgh, PA 15201
Fax 412-784-3488

**Sunoco, Inc. (R&M)**
Company Operations H.R. Dept.
Ten Penn Center, 22nd Floor
1801 Market Street
Philadelphia, PA 19103-1699
Fax 800-786-9026

**New York (Syracuse & Rochester Areas)**
550 Solar Street
Syracuse, NY
Fax 315-424-9395

**Eastern Division Office NE & NJ**
Sunoco, Inc.
1028 Stelton Road
Piscataway, NJ 08854-4398
Fax 732-981-0928

**Eastern PA**
Sunoco, Inc.
4041 Market Street
Twin Oaks, PA 19014-3197
Fax 610-859-5425

**Central/Northern PA**
Sunoco, Inc.
5145 Simpson Ferry Road
Mechanicsburg, PA 17055

The Division Operations Manager will review the issues with the appropriate sources in the situation (Area Manager, Store Manager, Human Resources and others deemed necessary) and have a response given to the employee.

The decisions at this step will be final. In all cases, the employee may express their views in writing for inclusion in the file.

During the problem solving process, the Area Manager, Division Operations Manager or Human Resources will determine if or when further corporate resources should be utilized. Human Resources will counsel management and the employee on policy, recordkeeping and communication issues.