UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

SCOTT SIEGAL,
   Plaintiff

vs.

MASCOT PETROLEUM COMPANY, INC.,
A SUBSIDIARY OF SUNOCO, INC (R&M),
   Defendant

C. A. No.: 05-10648-GAO

**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION FOR RECONSIDERATION OF COURT ORDER ON MOTION TO DISMISS**

**I. INTRODUCTION**

On or about April 20, 2005, Defendant, Mascot Petroleum Company, Inc., a Subsidiary of Sunoco, Inc. (R&M) ("Defendant") moved to dismiss Plaintiff, Scott Siegal's ("Plaintiff"), Complaint. On or about April 28, 2005, Plaintiff filed his Opposition to the Motion to Dismiss. Subsequently, Defendant filed a Reply Memorandum to Plaintiff's Opposition to Defendant's Motion to Dismiss and Plaintiff filed sur-reply to said Memorandum.

After a consideration of the submissions by both sides, the Court, on August 3, 2005, denied Defendant's Motion to Dismiss as to Count I of Plaintiff's Complaint but allowed Defendant's Motion to Dismiss as to Count II of said Complaint.

On August 18, 2005, Defendant filed a Motion for Reconsideration ("Motion") of the Court's August 3, 2005 Order. Because the Order is based on a correct application of the prevailing precedent, the Motion should be denied.

1

II. **ARGUMENT**

A. **THE COURT'S AUGUST 3, 2005 ORDER CORRECTLY APPLIED THE PREVAILING PRECEDENT AND MUST BE REAFFIRMED**

In its decision, the court acknowledges that the doctrine of equitable tolling "is generally reserved for exceptional cases" Chico-Velez v. Roche Products, Inc., 139 F.3d 56, 58-59 (1st Cir. 1998); Davis v. Lucent Technologies, Inc., 251 F.3d 227, 234 (1st Cir. 2001), but correctly holds that factual issues remain as to whether Defendant's promise to investigate Plaintiff's complaint of discrimination "affirmatively misled the Plaintiff," as to excuse his failure to file a complaint of discrimination within the applicable limitations period. In reaching this conclusion, the Court alludes to the fact that Defendant promised to investigate Plaintiff's complaint and to provide Plaintiff with its findings but failed to do so. Defendant rejects the Court's conclusion because, according to Defendant, Plaintiff's case is not an "exceptional case." Motion at 2. Defendant, however, does not state what constitutes an exceptional case.

Although the First Circuit held in Chico-Velez, supra, and subsequent cases, that equitable tolling is reserved for exceptional cases, the Court has not clearly delineated what constitutes an exceptional case, thus essentially allowing District Court Judges to determine that issue on a case-by-case basis. "Exceptional" therefore is a relative term of art that is open to reasonable interpretation. Here, a reasonable argument could be made that this is an exceptional case because the Defendant deliberately and without justification failed to comply with the provisions of its own employee handbook and deliberately misled Plaintiff into believing that an internal process was ongoing and that remediation was forthcoming. Moreover, by deliberately misleading Plaintiff, Defendant

2

rectified the discriminatory action of its manager without regards for its own policies and state and federal laws. It is therefore not a stretch to argue that an employer such as Defendant which endorses an illegal act has engaged in exceptional conduct, especially where, as here, that conduct is likely to be imputed to the employer at substantial financial costs. Ordinarily, employers seek to avoid or minimize liability by distancing themselves from the illegal acts of their employees. As such, any employer who endorses the illegal acts of its employees has engaged in an exceptional conduct in that such endorsement is extraordinary and outside the realm of customary practices.

1. **Current Case Law On Equitable Tolling Supports Denial Of Defendant's Motion As To Count I Of Plaintiff's Complaint**

Defendant next argues that the Court reverses itself and dismisses Count I of Plaintiff's Complaint because Plaintiff became aware of his right to file a complaint of discrimination one day before the statute of limitations expired. In making this argument, defendant relies on Mercado v. Ritz Carlton San Juan Hotel, Spa & Casino, 410 F.3d 41 (1st Cir. 2005). Defendant's reliance on Mercado is misguided because the facts of that case militate against dismissal of Count I of Plaintiff's Complaint. Although the Mercado plaintiffs consulted an attorney one and ten days, respectively after the expiration of the statute of limitations, they nevertheless filed their complaint thirty-three days after consulting an attorney. Mercado, 410 F.3d at 49. While it is true that the Plaintiff in this case gained the knowledge of his right to file, and where to file, a complaint of discrimination one day before the statute of limitations expired, he relied on Defendant's repeated promise to investigate his complaint and decided to contact Defendant by correspondence in the futile belief that Defendant would comply with the provisions of its

3

own Handbook which required Plaintiff to file a complaint with Defendant and Defendant to investigate same and provide Plaintiff with its findings. See Aff. of Siegal at 8.

Like the Mercado plaintiffs, the Plaintiff in this case was ignorant of the fact that he needed to file his complaint within a specified time; that ignorance is clearly demonstrated by the fact that he believed that by contacting Defendant on March 1, 2004 and threatening to file a complaint with the MCAD the Defendant would investigate the internal complaint he filed with the ethics department and reinstate him, or at least, provide him with a copy of its findings. Further, at the brief meeting referenced in the Motion, there was no discussion of when the discrimination occurred or what the discriminatory conduct consisted of. At that meeting, Plaintiff simply wanted to know whether there was anything he could do following his termination and was told that he may exercise his right by filing a complaint with the MCAD. However, because he felt compelled to comply with the provisions of the employee handbook, he decided to contact Defendant once more before taking any other action; that delay turned out to be a mistake, nevertheless a mistake due to ignorance of the filing requirement. Aff. of Siegal at 8.

Finally, Defendant argues that Count I of Plaintiff's Complaint be dismissed because "The cases relied on by this Court in its decision on the Motion to Dismiss further support dismissal in this case." Motion at 3. Defendant specifically relies on Davis, supra for support of this argument. Contrary to Defendant's argument, the facts of Davis are distinguishable from the facts of this case. In Davis, the Plaintiff argued that she failed to amend her complaint until 15 months after her termination because the EEOC assured her "that she would be able to amend her complaint to include more recent

4

incidents of discrimination." In support of this argument, the plaintiff submitted a letter she sent to the EEOC. Davis at 34. The First Circuit rejected that argument. The Court based its rejection of the argument on the ground that the letter contained "vague allegations, never reiterated in an affidavit and unsubstantiated by any other evidence." Id, at 34-35.

Here, Plaintiff alleges both in his Complaint and in an affidavit that he filed a complaint of discrimination with Defendant's ethics department, that the ethics department promised to investigate his complaint and provide him with its findings, that the ethics department told him to await the results of its investigation, and that the ethics department failed to investigate his complaint. These allegations are reiterated in the letter Plaintiff sent to the ethics department and in the complaint Plaintiff filed with the MCAD. Additionally, Defendant has not denied that Plaintiff filed a complaint of discrimination with the ethics department and has not denied that it promised to investigate Plaintiff's complaint of discrimination but failed to do so. In fact, in its Position Statement filed with the MCAD, Defendant acknowledged that Plaintiff filed a complaint with the ethics department on May 8. 2003. Copies of the Position Statement and MCAD Complaint are attached hereto as **Exhibits 1 and 2**, respectively. Therefore, the letter Plaintiff sent to the ethics department is supported by other evidence that have not been refuted.

2.  **Plaintiff Is Entitled To Equitable Tolling Because The Provisions of Defendant's Employee Handbook Constitute Employment Contract**

Although the Court does address the contractual nature of Defendant's employee handbook in its August 3, 2005, decision, Plaintiff contends that the provision of the

5

employee handbook constitute employment contract under Massachusetts law. See e.g., O'Brien v. New England Telephone & Telegraph Co., 422 Mass. 686, 694-695 (1996). That being the case, the grievance procedures set forth in the employee handbook and followed to the letter by Plaintiff independently entitles Plaintiff to equitable tolling in this case.

### III. CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny the Motion for Reconsideration and reaffirm the Order of August 3, 2005.

Respectfully submitted,

Scott Siegal
By his attorney,

Regan Associates, Chartered

Johannes Z. Zlahn (BBO# 565218
45 School Street, Third Floor
Boston, MA 02108
(617) 367-1100, Ext. 710

## CERTIFICATE OF SERVICE

I, Johannes Z. Zlahn, attorney for the Plaintiff, Scott Siegal, hereby certify that on the 26th day of May, 2005, I served the foregoing Plaintiff's Opposition to Defendant's Motion for Reconsideration on the Defendant by mailing a copy thereof, postage prepaid, to:

Ricahrd W. Paterniti, Esq.
Jackson Lewis, LLP
75 Park Plaza
Boston, MA 02116

Dated: 08/29/2005

Johannes Z. Zlahn

The Commonwealth of Massachusetts
Commission Against Discrimination

MCAD Docket Number: 04BEM00651
EEOC/HUD Charge No: 16CA401159

Scott Siegal
        Complainant
  v.

Mascot Petroleum Company, Inc
a subsidiary of Sunoco, Inc. (R&M)
        Respondent

**POSITION STATEMENT OF RESPONDENT, MASCOT PETROLEUM COMPANY, INC.**

This Position Statement is being submitted at the request of the Commonwealth of Massachusetts Commission Against Discrimination ("MCAD") and sets forth the response of the MASCOT Petroleum Company, Inc. ("Respondent" or "Mascot") to the charge of race and color discrimination filed by Scott Siegal ("Complainant"). Mascot submits this Position Statement for the sole use of MCAD in its attempt to investigate the instant matter. Respondent is represented by counsel in this matter. In addition, Mascot reserves the right to supplement or amend this Position Statement, including any attachments, as necessary.

**Background**

The Mascot Petroleum Company is a wholly owned subsidiary of Sunoco, Inc. (R&M) and consists of APlus convenience stores and service centers. APlus convenience stores offer a broad range of retail merchandise including gasoline, tobacco, and food products.

Scott Siegal began working as a Sales Associate for Mascot on or around December 2, 2002. Between December 2002 and May 2003 he worked at the APlus location on 437 Rantoul Street in Beverly, M.A. As a Sales Associate, Complainant was entrusted with handling monetary transactions, providing customer assistance and other associated duties. He performed these and other tasks under the supervision of the Facility Manager. It is the responsibility of the Facility Manager to manage his/her designated store location in an effective and efficient manner. This includes ensuring loss prevention and making certain that company policies and procedures are followed.

### Allegation of Race & Color Discrimination

In Complainant's charge he alleges Respondent discriminated against him on the basis of his race and color by terminating his employment. In support of his claim he avers that he was terminated by his manager on May 6, 2003 "for a cash shortage of $23.00". He continues by explaining that he "was never issued any warnings before this" and that after his termination he "became aware that Ismal had replaced [him]".

**Attachment A** is a copy of the Mascot Petroleum Employee Handbook. Pages 30-31 of the Handbook outline the circumstances in which a verbal or written warning will be issued to an employee. Failure to control inventory or cash losses is one reason for issuance of such a warning. Contrary to the statements sworn and affirmed to in Scott Siegal's charge he received and signed off on several warnings while employed with Mascot. **Attachment B** is a copy of an Employee Discipline Notice issued to Complainant on March 31, 2003. The Notice was issued in response to two shortages in cash deposits. One shortage was for $22.67 and occurred on March 12, 2003 and the other occurred on March 30, 2003 in the amount of $15.45. Although this was the first Notice given for cash shortages it was not the last time Mr. Siegal was made aware of his need to do better with cash handling. **Attachment C** is a copy of Complainant's April 2003 Performance Appraisal. The Appraisal was prepared by the store's Facility Manager and rates Mr. Siegal as "Accomplished". It also advises that "Scott needs to focus on [lottery] control and cash shortages". As is the case with the March 31, 2003 Employee Discipline Notice, Complainant signed the Employee Performance Appraisal. He also added an employee comment to the Appraisal wherein he stated, "I agree with my manager that I need to slow down and focus more with cash handling".

Leaving work earlier than scheduled without prior authorization is also cause for issuance of an employee warning (See page 13 of Attachment A.). If an employee determines that he/she needs to vacate his/her shift prior to their scheduled leave time, a manager must be contacted prior to the employee's departure. On April 8, 2003 Complainant was scheduled to work from 2:00 p.m. to 11:00 p.m. Instead of leaving work at 11:00 p.m. he left at 5:15 p.m. (See **Attachment D**, Employee Shift Schedule & Time Sheet). Mr. Siegal did not bother to contact the Facility Manager or the Area Manager to notify them that he was closing the store early; he simply closed the store and left. Once again, a policy violation in accordance with Page 31 of the Handbook (Attachment A), as well as, Page 32 which explains that "leaving the store during work hours without permission" is "grounds for immediate dismissal". The Area Manager ultimately became aware of the store's closure when Complainant's wife contacted her to advise her that

Complainant left early. As outlined in his charge Mr. Siegal then provided Respondent with a series of notes from various health care providers which restricted him from returning to work until April 14, 2003. Once he returned to work he was not terminated, but another write-up was presented for his policy infraction (See **Attachment E**, Employee Discipline Notice).

Even though Scott Siegal was repeatedly counseled by both the Facility Manager and the Area Manager, advised of his shortcomings by way of a performance appraisal, and disciplined; he continued to have shortages and to violate Company policy. On April 1, 22 and 23, 2003 he experienced shortages in the amount of $14.00, $21.00 and $13.39, respectively (See **Attachment F**, Employee Discipline Notice). Five days after receiving the Discipline Notice for those shortages he experienced a lottery shortage of $23.00. In addition, on May 3, 2003 he was scheduled to begin work at 2:00 p.m. The Mascot Handbook lists unscheduled absence with less than 24 hours notification as a policy infraction which warrants a written warning. Additionally, employees must notify their manager of an absence from scheduled work. Instead of providing reasonable notice or contacting his manager, Mr. Siegal called the cashier on duty at 12:00 p.m. and told her that he was not coming to work. Due to the late notice that cashier worked a 19 hour day. Complainant worked May 4th and called off on May 5th.

On May 6, 2003 Mr. Siegal came to the store with a note requesting that he be excused from work. While at the store the Facility Manager presented Complainant with the Discipline Notice for the April 30, 2003 lottery variance (See **Attachment G**). This was the third written warning issued for shortages and it resulted in Complainant's termination. Mr. Siegal alleges in his charge that he "was never issued any warnings before this" and that his "manager produced warnings that…were written against [him] that [he] never [saw] before". Please note the Employee Statement section of the May 6th Notice wherein Scott Siegal writes, "I keep getting blamed for money shortages…" and where he also exclaims, "…this was only [the] second warning". Also note Scott Siegel's signature on each of the Discipline Notices previously provided and on his Performance Appraisal. The only Discipline Notice which does not bear Complainant's signature is the second one issued on May 6 for improperly calling out on May 3, 2003 which Mr. Siegel refused to sign (See **Attachment H**).

## Mascot's Refutation of Complainant's Allegation of
## Race and Color Discrimination

Mascot denies that it has discriminated against Complainant on the basis of his race, color or in any other manner. The actions of Respondent in this matter have not been in violation of the M.G.L. 151B Section

4 or Title VII of the Civil Rights Act of 1964, as amended. Although Complainant may be able to establish that he is a member of a protected class; he can not establish that Respondent took adverse action against him because of this factor or that it played any role in the Company's decisions, because it did not. Mr. Siegal references the internal complaints that he filed with the Company's employee hotline. The first call was made on May 8, 2003 at 10:35 a.m. In that call he advised the hotline administrator, Pinkerton, that he was terminated because he "brought in medical documentation" and this was the basis for the discrimination against him. In his second call on May 8, 2003 at 11:11 a.m. he asked that no action be taken regarding his initial complaint. He called again on May 28, 2003 and alleged that his co-worker is "Ismal's" sister and that she "created the cash shortages, which led to his termination". First, Ismal's sister is not employed at the store location. Also, co-workers do not share registers during a shift. Complainant's allegation that he was terminated because "Ismal was returning to the US" is baseless. Management continuously made Scott Siegel aware that he was performing his job responsibilities in a careless manner causing violations of the Company's policies and procedures. However, he continued to perform in a negligent manner, which led to his termination. Contrary to Complainant's averments, Respondent wrote him up for legitimate nondiscriminatory reasons based on a reasonable set of rules. There is no reasonable belief now that he was treated in a differential fashion because of his race or color. As such, and for the reasons set forth above Respondent submits that Complainant's charge is frivolous and without merit and urges the Commission to issue a determination of no probable cause.

Very truly yours,

*[signature]*

Tiana R. Escofil
Paralegal

Subscribed and sworn to before me this 16 day of June, 2004.

*[signature]*

Notary Public

COMMONWEALTH OF PENNSYLVANIA
Notarial Seal
Judith Ann Fritsch, Notary Public
City Of Philadelphia, Philadelphia County
My Commission Expires Mar. 27, 2008

Member, Pennsylvania Association Of Notaries

**The Commonwealth of Massachusetts**
**Commission Against Discrimination**
One Ashburton Place , Boston, MA 02108
Phone: (617) 994-6000 Fax: (617) 994-6024

3/15/2004

        RE: Scott   Siegal   vs. Macot Ptroleum Co., Inc. d/b/a/
        Sunoco
        MCAD Docket Number:  04BEM00651
        EEOC/HUD Number: 16CA401159

Dear Complainant Party:

Please be advised that the Massachusetts Commission Against Discrimination (MCAD) has assigned Pamela Brooks to investigate the above referenced complaint of discrimination. The Commission's investigator will review the allegations in the complaint and will keep the parties informed of developments arising from that investigation.

Please indicate the following by initialing the correct statement:

\_\_\_\_ I am represented by an attorney in this matter. If you initial this statement, you must submit to the investigator a Notice of Appearance from your attorney within 10 days of the date of this letter in order to be considered represented by counsel.

*SS* I am not represented by an attorney in this matter.

Please note that if your situation changes you must notify the Commission immediately. Also, failure to accurately complete this statement may result in your claim being administratively closed for failure to cooperate with the Commission's investigation.

In order to reduce the time necessary to investigate and resolve complaints of  discrimination, the MCAD schedules an Investigative Conference with the parties shortly after the complaint is filed. Information about the Conference is included with this notice.

An Investigative Conference regarding the above complaint will be held at the Commission's Office, One Ashburton Place , Boston, MA at 01:00 PM on 05/19/04. You are required to attend this conference and your failure to do so will be taken as representing a lack of interest on your part in pursuing this claim.

If you have any questions pertaining to the Investigation, please contact Pamela Brooks at (617)-994-6090.

Very truly yours,


Pamela Brooks
Investigator

Cc:

The Commonwealth of Massachusetts
Commission Against Discrimination
One Ashburton Place, Boston, MA 02108
Phone: (617) 994-6000 Fax: (617) 994-6024

| | |
|---|---|
| MCAD DOCKET NUMBER: 04BEM00651 | EEOC/HUD CHARGE NUMBER: 16CA401159 |
| FILING DATE: 03/15/04 | VIOLATION DATE: 01/08/04 |

Name of Aggrieved Person or Organization:
Scott Siegal
139 Park Street
Beverly, MA 01915
Primary Phone: (978)969-2996 ext.

Named is the employer, labor organization, employment agency, or state/local government agency who discriminated against me:
Macot Ptroleum Co., Inc. d/b/a/ Sunoco
Human Resources
437 Rantoul Street
Beverly, MA 01915

No. of Employees:     20 +

Work Location: Beverly

Cause of Discrimination based on:
Race, Color, White (Non-Hispanic).

**The particulars are:**
I, Scott Siegal, the Complainant believe that I was discriminated against by Macot Ptroleum Co., Inc. d/b/a/ Sunoco, on the basis of Race, Color. This is in violation of M.G.L. 151B Section 4 Paragraph 1 and .

I began working for the Respondent, Sunoco, in December 2002, as a sales associate. I performed my job well and never received warnings regarding my performance until April 2003. On April 8, 2003, I had an accident at home, in which I suffered a back injury. Although I experienced pain I went in to work that day. Approximately two hours later I realized that I needed to get to the hospital because I was in too much pain.

In or around February 2003, a co-worker, Gene (LNU) stated " watch your back, I've seen this sort of thing before, people will be falsely accused." and that "Ishmael was returning to the US, would get his job back and one of us would be fired." On April 8, 2003, I provided a note to my Manager, to inform him that I would be out of work for two days pursuant to my doctor's orders. I returned to the doctor on April 10, 2003 and was reevaluated by my physician who ordered that I stay out of work until April 14, 2003. On May 5, 2003, my doctor ordered that I stay out of work until May 11, 2003. My Manager terminated my employment on May 6, 2003, for a cash shortage of $23.00. I was never issued any warnings before this, however, my manager produced warnings that were farley written against me that I never seen before. After my termination, I became aware that Ismal had replaced me.

I complained to the ethics department in May 2003, regarding the manner in which I was terminated. I was told that an investigation will be conducted, but Respondent never followed up to inform me of its findings. I continued to inquire about the findings of the investigation to no avail. I believe that Respondent's reason

MCAD Docket Number 04BEM00651, Complaint

for terminating against me was not the real reason; the real reason was that I am an American, in violation of state and federal statutes.

I swear or affirm that I have read this complaint and that it is true to the best of my knowledge, information and belief.

_____
(Signature of Complainant)

SWORN TO AND SUBSCRIBED BEFORE ME ON THIS DAY of 3/15/2004.

NOTARY PUBLIC: Allison E. Hope

SIGNATURE NOTARY PUBLIC: Allison E. Hope

MY COMMISSION EXPIRES: 10/1/04

MCAD Docket Number 04BEM00651, Complaint